UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SAMUEL CASALE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket No. 2:21-cv-00126-NT |
| | ) |
| ECOLAB INC., et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER ON PLAINTIFF'S MOTION TO
RECONSIDER, ALTER, OR AMEND JUDGMENT**

Before me is the Plaintiff's motion to reconsider my earlier order granting the Defendants' motion to compel arbitration ("**Pl.'s Mot.**") (ECF No. 27). For the reasons stated below, the motion is **DENIED**.

**BACKGROUND**

From 1995 until 2011, Plaintiff Samuel Casale worked in sales for Defendant Nalco Company LLC, which was later acquired by Defendant Ecolab Inc. ("**Ecolab**"). Compl. ¶¶ 5, 11–17, 21 (ECF No. 1). In 2018, Ecolab notified him that his position was being eliminated. Compl. ¶¶ 57–58. After his termination, Mr. Casale sued the Defendants on various grounds. Compl. 12–18.

After Mr. Casale filed his Complaint, the Defendants moved to compel arbitration and to dismiss or stay this case, arguing that Mr. Casale's claims could only be brought in arbitration. Defs.' Mot. to Compel Arbitration and Dismiss or in the Alternative Stay Pl.'s Compl. ("**Defs.' Mot.**") 12 (ECF No. 15). On December 17, 2021, Mr. Casale filed his opposition to the motion (the "**Plaintiff's opposition**").

Pl.'s Opp'n to Defs.' Mot. ("**Pl.'s Opp'n**") (ECF No. 19). On January 6, 2022, the Defendants filed their reply, and the motion was fully briefed. Defs.' Reply in Supp. of Defs.' Mot. (ECF No. 22). Then, on February 14, 2022, I issued an order granting the Defendant's motion to compel, and the Clerk issued the Judgment. Order on Defs.' Mot. to Compel Arbitration ("**Order**") 17 (ECF No. 23); Judgment (ECF No. 24).

In my Order, I applied the law that controlled at the time of my decision (and still does now), relying heavily on *Air-Con, Inc. v. Daikin Applied Latin America, LLC*, 21 F.4th 168 (1st Cir. 2021), which the First Circuit had decided on December 20, 2021. Order 1 n.1, 5–7, 10. In *Air-Con*, the First Circuit determined that "the summary judgment standard" applies to motions to compel arbitration under the Federal Arbitration Act. 21 F.4th at 175. Accordingly, I examined the evidence that the parties had put before me. The Defendants principally relied on a declaration submitted by Stefanie Cossalter Motley (the "**Motley Declaration**"), a human resources representative from Ecolab's Employee Relations and Compliance department, and exhibits attached thereto. Motley Decl. ¶ 3. The Plaintiff, on the other hand, offered no evidence and made no attempt to rebut the facts offered by Ms. Motley. Rather, he challenged the admissibility of her declaration by disputing the basis for some of her conclusions and sought to identify purported holes in the information she had provided. *See* Pl.'s Opp'n 1–4. I rejected the Plaintiff's evidentiary objections to Ms. Motley's declarations. Order 9–11. As a result, to the extent Ms. Motley's conclusions were accurately supported, I accepted them as true. Order 3. The Plaintiff also criticized the Defendants for failing to produce a signed

2

copy of the arbitration agreement and instead relying only on circumstantial evidence, and he challenged the reliability of the confirmation email that the Defendants said Mr. Casale had received after agreeing to the arbitration agreement. Pl.'s Opp'n. 3–4, 6–7. I concluded that the Defendants' reliance only on persuasive circumstantial evidence rather than the signed agreement was not problematic and rejected the challenge to the confirmation email. Order 8, 10.

The Plaintiff now moves for reconsideration of my Order, primarily in reliance on *Air-Con*. He contends, pursuant to *Air-Con*, that he should have been given "an opportunity to take discovery" prior to being compelled to arbitrate. Pl.'s Mot. 5–6. He also argues that I incorrectly viewed his "arguments about the Motley affidavit as merely 'identifying purported holes' in the information she provided" when he instead "argued that the Motley affidavit was inadmissible." Pl.'s Mot. 6.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 59(e) allows for "[a] motion to alter or amend a judgment."[1] Fed. R. Civ. P. 59(e). Prevailing on such a motion is no easy task. *Marie*

---

[1] A Rule 59(e) motion "must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). And Rule 6(b)(2) prohibits an extension of this deadline. Fed. R. Civ. P. 6(b)(2). In this case, the Plaintiff moved for an extension of time to file his Rule 59(e) motion, which the Defendants did not oppose. Pl.'s Unopposed Mot. to Extend Time to File Mot. to Reconsider, Alter, or Amend J. (ECF No. 25). I granted that motion. Order (ECF No. 26). But, pursuant to Rule 6(b)(2), I should not have. Nevertheless, Rule 6(b) is not jurisdictional; it is a claim-processing rule. *Mobley v. CIA*, 806 F.3d 568, 577 (D.C. Cir. 2015); *Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 615 F.3d 1352, 1359 n.15 (11th Cir. 2010); *cf. Kontrick v. Ryan*, 540 U.S. 443, 454–56 (2004) (identifying Rule 6(b) as an example of a time when the Court erroneously characterized a claim-processing rule as jurisdictional). As a result, this deadline only comes into play to the extent that a party invokes it. *Legg v. Ulster Cnty.*, 979 F.3d 101, 112 (2d Cir. 2020); *see Kontrick*, 540 U.S. at 456 ("[O]bjections to noncompliance [with a claim-processing rule] . . . can . . . be forfeited if the party asserting the rule waits too long to raise the point."). Because the Defendants did not oppose the Plaintiff's motion, they forfeited their right to invoke Rule 6(b). I will thus consider the Plaintiff's motion even though it was not timely under the Federal Rules of Civil Procdure.

3

*v. Allied Home Mortg. Corp.*, 402 F.3d 1, 7 n.2 (1st Cir. 2005). A district court should grant such a motion—popularly known as a motion for reconsideration—only if the moving party "clearly establish[es] a manifest error of law" or fact, puts forward "newly discovered or previously unavailable evidence," demonstrates a "manifest injustice," or identifies "an intervening change in controlling law." *Id.* (internal quotation marks omitted); *accord In re Genzyme Corp. Sec. Litig.*, 754 F.3d 31, 46–47 (1st Cir. 2014). A motion for reconsideration "is not a place 'for a party to undo its own procedural failures' and a party should not be allowed to 'advance arguments that could and should have been presented to the district court prior to judgment.' " *Disaster Sols., LLC v. City of Santa Isabel*, 21 F.4th 1, 7 (1st Cir. 2021) (quoting *Iverson v. City of Bos.*, 452 F.3d 94, 104 (1st Cir. 2006)). Because the purpose of Rule 59(e) is to "give[ ] a district court the chance 'to rectify its own mistakes,' . . . courts will not address new arguments or evidence that the moving party could have raised before the decision issued." *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020) (quoting *White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445, 450 (1982)).

## DISCUSSION

The Plaintiff invokes two Rule 59(e) grounds for his motion, that there has been a change in controlling law and that I made "manifest errors of law" in my original decision. Pl.'s Mot. 2.

### I.  Change in Controlling Law

The Plaintiff contends that, in deciding *Air-Con,* the First Circuit announced a new standard to be applied on a motion to compel arbitration after he filed his

4

opposition and that it thus constitutes an intervening change in controlling law. Pl.'s Mot. 4. I doubt that. An "intervening change in the controlling law" is a change that happens *after* a district court has issued its decision (i.e., between the time of the order and the 59(e) motion), not one that happens in the middle of briefing. *See Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 565, 567, 568 n.3 (5th Cir. 2003) (finding that decision that was issued five months before district court order—and after briefing had been completed—could not "constitute an intervening change in the law"); *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 618 F.3d 505, 513 (6th Cir. 2010) ("Far from being an intervening change in the law, this [purported change] formed part of the basis for the district court's decision . . . ."); *cf. Banister*, 140 S. Ct. at 1703 n.2 (noting the rarity with which an argument based on an intervening change in controlling law could "emerge within Rule 59(e)'s strict 28-day timeframe").

This makes sense linguistically because something "intervenes" if it happens between two events. *See Intervening Cause*, Black's Law Dictionary (11th ed. 2019) (defining an "intervening cause" as "[a]n event that comes between the initial event in a sequence and the end result"). It would be odd to characterize something that happened in the middle of briefing as having occurred between two events. Once judgment has issued, however, it makes sense to describe any change in controlling law as "intervening" because it has occurred between the issuance of the judgment and the filing of the Rule 59(e) motion.

This also makes sense logically. In this case, where the purported change in precedent occurred mere days after the Plaintiff filed his response, the Plaintiff could

5

have chosen a number of different courses of action, such as requesting leave to file a sur-reply or to file supplemental briefing. Instead, he sat silent for the fifty-six days between when *Air-Con* was issued and when I issued my Order. Had the Plaintiff taken one of these steps, it would have presumably streamlined this process.

It is also not clear that *Air-Con* really changed the obligations of a party seeking to oppose arbitration. In the Plaintiff's original opposition, he demonstrated an understanding of the standard when he wrote: "In order to defeat the motion to compel arbitration, Casale must show 'a genuine issue of material fact as to the validity of the agreement to arbitrate.' " Pl.'s Opp'n 7 (quoting *Crews v. Maxim Healthcare Servs., Inc.*, Case No. 21-CV-01019-STA-jay, 2021 WL 2417732, at *2 (W.D. Tenn. June 14, 2021)).

Further, even if the First Circuit was plowing new ground, this Court had already employed the summary judgment standard in this type of case. *See Snow v. BE & K Constr. Co.*, 126 F. Supp. 2d 5, 7 (D. Me. 2001) ("When a party opposes a motion to stay pending arbitration on the ground that the parties never agreed to arbitrate, a federal court should apply the summary judgment standard."); *Boulet v. Bangor Sec. Inc.*, 324 F. Supp. 2d 120, 123–24 (D. Me. 2004) ("When ruling on a motion to compel arbitration, the court should 'consider facts in the light most favorable to the Plaintiff and exercise its wide discretion to look beyond the complaint at pleadings and documents submitted by either party.' " (quoting *Anderson v. Delta Funding Corp.*, 316 F. Supp. 2d 554, 558–59 (N.D. Ohio 2004))).

In fact, eleven years ago, the First Circuit criticized a plaintiff who took a similar approach to the Plaintiff. In that case, the defendants produced various documents in support of a motion to compel arbitration, while it does not appear the plaintiff submitted anything beyond a mere denial of the facts put forward by the defendants. *See Soto v. State Indus. Prods., Inc.*, 642 F.3d 67, 70–71, 72 & n.2 (1st Cir. 2011). The court found that this general denial was not enough to "put material facts into dispute" and emphasized that "a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests." *Id.* at 72 n.2 (quoting *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002)). Rather, "the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.* (quoting *Tinder*, 305 F.3d at 735). The *Soto* court found that the plaintiff's unsworn declaration was not enough to "raise a genuine issue of material fact." *Id.* Yet the Plaintiff here put forward even less evidence than an unsworn declaration. He put forward no evidence at all.

But even if *Air-Con* can be seen as new law, it is of little help to the Plaintiff's case. As I explained in my earlier order, *Air-Con* outlined the following procedure for evaluating a motion to compel arbitration:

> The reviewing court considers all of the evidentiary materials before it and, construing the record in the light most favorable to the non-movant, determines whether a genuine dispute of fact exists regarding whether the parties agreed to arbitrate. If a genuine dispute exists, the court convenes a hearing to resolve any factual disputes that require resolution before it can be determined whether the parties agreed to arbitrate. The burden to prove a valid arbitration agreement rests with the moving party. But if the party moving to compel arbitration meets its initial burden of production, the non-moving party must offer evidence supporting its own case. The party opposing arbitration must

> provide prompt notice of whatever claims he/she may have in opposition to arbitration and the evidentiary basis of such claims. He/she cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests but instead must identify specific evidence in the record demonstrating a material factual dispute left to be adjudicated. Only if the non-moving party puts forward materials that create a genuine issue of fact about a dispute's arbitrability should the district court convene a trial to resolve that question.

Order 6 (internal citations and quotation marks omitted). This is consistent with § 4 of the Federal Arbitration Act, which "provides that a district court must enter an order to arbitrate 'upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue.'" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 n.27 (1983) (quoting 9 U.S.C. § 4). "If either of these points is in issue, § 4 provides that 'the court shall proceed summarily' to a trial on that point," and "a request for relief under . . . § 4 is to be treated procedurally as a motion." *Id.* (quoting 9 U.S.C. §§ 4, 6). This is the standard that I used in my prior order. And it is also the standard that the Plaintiff now says I should have used. Pl.'s Mot. 5–6. Although the Plaintiff asserts that I used the incorrect standard in my earlier order, his gripe is actually with how I applied that standard.

The Plaintiff's objections boil down to two main points: (1) so long as the Plaintiff "disputed contract-formation questions," he was entitled to discovery and he was under no obligation to first offer any evidence because the Defendants had not met their burden of production; and (2) I did not construe all reasonable inferences in his favor. Pl.'s Mot. 5–6 (quoting *Air-Con*, 21 F.4th at 175).

The Plaintiff's first objection misreads *Air-Con* and plays fast and loose with the arguments made in his original opposition. As to the misinterpretation of *Air-*

8

*Con*, it is not enough for a Plaintiff to argue that the issue of contract-formation is in dispute. He must actually *demonstrate* that it is in dispute. *Cf. Jakobiec v. Merrill Lynch Life Ins. Co.*, 711 F.3d 217, 226 (1st Cir. 2013) ("Faced with a defendant's motion for summary judgment, a plaintiff must come forward with some evidence showing a genuine dispute of material fact if he wants to get in front of a jury."). Moreover, at the risk of stating the obvious, even assuming the Plaintiff had been entitled to request discovery, the point remains that he never made such a request. In order for a party to get "discovery to support or oppose a motion to compel arbitration," the party must "seek" that discovery, *Air-Con*, 21 F.4th at 175, not merely stand by and wait for an invitation from the court.[2]

As to the mischaracterization of his earlier briefing, the Plaintiff now claims that it was clear from his original opposition that he "vehemently 'disputed contract-formation questions' in this case." Pl.'s Mot. 5 (quoting *Air-Con*, 21 F.4th at 175). But in the Plaintiff's opposition, he did not dispute the existence of an agreement to

---

[2]    The Plaintiff's opposition argued only that the Defendants were "unable to show that a written agreement to arbitrate exists." Pl.'s Opp'n to Defs.' Mot. 7 (ECF No. 19). The Plaintiff did not contend that an agreement to arbitrate did not exist, and he did not contend that he did not electronically sign the agreement. Only in support of his Motion for Reconsideration does the Plaintiff now assert by a sworn declaration that he does not recall clicking the button to sign the agreement. Aff. of Samuel Casale in Supp. of Mot. for Reconsideration ¶ 4 (ECF No. 27-1). Whether that assertion would have been enough to generate a material dispute is debatable. People do things that they do not remember doing all the time. Still, it is a close enough call that if he had made that assertion and moved for limited discovery, I would likely have allowed it. But he did not make that assertion in his opposition, and he did not request discovery.
    The Plaintiff seeks to excuse this failure by claiming that he did not know he could seek discovery because "*Air-Con* was decided after Plaintiff had an opportunity to oppose the motion to compel." Pl.'s Mot. to Reconsider, Alter, or Amend J. ("**Pl.'s Mot.**") 14 n.3 (ECF No. 27). Even setting aside the fact that the Plaintiff had fifty-six days from the time *Air-Con* was issued to the time I issued my original order—during which he had ample opportunity to make a number of requests, including for discovery—Federal Rule of Procedure 26(d) allows for discovery "when authorized . . . by court order." Fed. R. Civ. P. 26(d)(1). Nothing prevented the Plaintiff from seeking such an order prior to the issuance of my original order denying his motion. It is too late for him to seek discovery now.

9

arbitrate. Rather, the Plaintiff was clear that he did not believe the Defendants had met their burden to establish the existence of a valid arbitration agreement. Pl.'s Opp'n 7–8. And it is clear from his motion for reconsideration and his affidavit that that is why he purposefully chose to put forward no evidence in response to the Defendants' motion. Pl.'s Mot. 3, 5–6, 11–12, 18; Aff. of Samuel Casale in Supp. of Mot. for Reconsideration ("**Casale Aff.**") ¶ 8 (ECF No. 27-1) ("I did not believe I needed to submit an affidavit setting forth the above facts because Ecolab never proved that I signed the arbitration agreement . . . ."). The Plaintiff took a gamble that I would agree with him that the Defendants had not met their initial burden of production. I did not agree. As I explained in my earlier Order, the Defendants "presented strong circumstantial evidence that [Mr. Casale] electronically sign[ed]" the arbitration agreement. Order 8. And once the Defendants met their burden of production, it was incumbent on the Plaintiff to create a factual dispute. *Air-Con*, 21 F.4th at 175 & n.8; *Soto*, 642 F.3d at 72 n.2. He failed to do so.[3]

Finally, the Plaintiff complains that I did not construe all reasonable inferences in his favor as the nonmoving party. But he does not point to any particular inferences that he believes I construed against him. Rather, it seems he merely disagrees with my legal conclusions rather than my factual ones. Such disagreement is not a valid basis for a motion for reconsideration.

---

[3]   In another part of his motion, the Plaintiff contends that I "incorrectly plac[ed] the burden on [him] to 'rebut what [the] Defendants . . . offered.' " Pl.'s Mot. 17 (quoting Order 8 n.2). That misunderstands my earlier Order. While it was the Defendants' burden to prove a valid agreement to arbitrate, once the Defendants introduced sufficient evidence of such an agreement—as I found that they did—the burden of production shifted to the Plaintiff to introduce evidence to call the Defendants' evidence into question. *See* Order 6, 8 n.2, 10. The Plaintiff opted not to do that.

10

## II. Purported Errors of Law

While the remainder of the motion for reconsideration purports to identify errors of law that warrant reconsideration, the Plaintiff principally reargues and refines his original arguments. He argues that circumstantial evidence of the existence of a contract is inadequate; he argues that the confirmation email is not admissible evidence of the existence of a contract under Maine law; he expands on his argument that the Motley Declaration and its attachments consist of inadmissible hearsay; he launches additional attacks on the information outlined in the Motley Declaration; and he seeks to introduce new evidence into the record—an affidavit that he could have attached to his original response. Pl.'s Mot. 9–18; Casale Aff. He also seeks to shoehorn a sur-reply into this motion, explicitly seeking to rebut some of the arguments made in the Defendants' original reply. Pl.'s Mot. 8–9. It is inappropriate and impermissible to make new arguments and to introduce additional evidence on a motion for reconsideration, *see Disaster Sols.*, 21 F.4th at 7–8, and I will not consider them.

Instead, I will focus only on the errors that the Plaintiff says I made in my earlier Order. He says I erred in "concluding that 'the making of the agreement for arbitration' was not in issue simply because [he] did not submit evidence." Pl.'s Mot. 11.[4] But I did not draw such a conclusion. Rather, while the Plaintiff put the validity of the arbitration agreement in issue, I concluded that the Defendants had met their burden to establish that a valid arbitration agreement existed. Order 8–11, 13–14.

---

4    I do not know where the Plaintiff's quoted phrase comes from. He did not provide a citation.

11

The Plaintiff also contends that I erred in "concluding that circumstantial evidence will suffice to prove the existence of a signed contract." Pl.'s Mot. 11. Not only is this an argument that could have been made in his original response to the Defendants' motion to compel arbitration, but he also cites no cases to support this contention.[5] He has thus failed to identify an error of law in this regard.

The Plaintiff next explains why he continues to believe the Motley Declaration is inadmissible. This is a naked attempt to expand upon an argument that he already made in his original opposition. *See* Pl.'s Opp'n 2–3. The Plaintiff identifies three errors that he says I made in relying on the Motley Declaration in my original decision: (1) that I failed to recognize that the Plaintiff was arguing that the Motley Declaration was inadmissible, (2) that the Motley Declaration should have been excluded as hearsay, and (3) that the Best Evidence Rule required the Defendants to produce the signed contract and did not permit them to rely on a chain of inferences to prove the existence of the contract. Pl.'s Mot. 6, 15–17.

The Plaintiff's first purported error is mistaken. In my original decision, I recognized that the Plaintiff had "argue[d] that there [was] insufficient foundation for the information in the Motley Declaration" and that because she lacked knowledge

---

[5]  While the Plaintiff cites plenty of cases, none deals with the use of circumstantial evidence to establish the existence of a contract. His contention that Maine law does not allow circumstantial evidence to prove the existence of a contract is not only unsupported, but there is reason to believe that it may be wrong. *See Hill v. Packard*, 69 Me. 158, 159 (1879) ("The law does not require direct evidence of a request. It may be proved . . . by circumstantial evidence."); *Ross v. Me. Cent. R. Co.*, 96 A. 223, 227 (Me. 1915) ("[T]he implied contract may be shown by direct or circumstantial evidence."); *cf. Lyman v. Redman*, 23 Me. 289, 295 (1843) ("[T]he evidence to show [the circumstances], as in any other contract, may be express or implied, circumstantial, as well as positive and direct."). I need not resolve this issue because the Plaintiff has forfeited this argument by failing to offer adequate support for it. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990).

12

her "Declaration must be 'predominantly comprised of hearsay.' " Order 9 (quoting Pl.'s Opp'n. 2–4). In other words, I recognized that the Plaintiff was arguing that the Motley Declaration was inadmissible because it lacked foundation and was therefore hearsay. But, as I outlined in my Order, I did not find the Plaintiff's argument to be persuasive. Order 9 ("The problem with this line of argument is that it ignores that the Motley Declaration explicitly says that it is based on Ms. Motley's personal knowledge and that she is 'familiar with Ecolab's practices with respect to employee agreements, specifically including arbitration agreements.' " (quoting Motley Decl. ¶¶ 2–3)). Since I found that there was an adequate foundation in the declaration, the Plaintiff's argument that her testimony was hearsay also failed.

This is also why the Plaintiff's second argument is improper. He already argued that the Motley Declaration should have been excluded as hearsay, Pl.'s Opp'n 2–4, and I already outlined why I disagreed, Order 9. That he chooses to make new arguments as to why he believes the Motley Declaration is hearsay is of no moment. These arguments are not proper at this stage of the litigation.

For the same reason, the Plaintiff's Best Evidence Rule argument and other evidentiary arguments are nonstarters. These arguments could have been made in response to the original motion, and they are not properly presented for the first time on a motion for reconsideration.

## CONCLUSION

For the reasons stated above, the Court **DENIES** the Plaintiff's motion for reconsideration.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 3rd day of June, 2022.